IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DELLA F. SALMON,                                Civil No. 06-6279-AA
                                                OPINION AND ORDER
        Plaintiff,

    vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

---

Kathryn Tassinari
Drew L. Johnson
Drew L. Johnson, P.C.
1700 Valley River Drive
Eugene, Oregon 97401
    Attorneys for plaintiff

Karin Immergut
United States Attorney
District of Oregon
Britannia Hobbs
Assistant United States Attorney
1000 S.W. Third Avenue
Portland, Oregon 97204-2902

Joanne Dantonio
Special Assistant U.S. Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, Washington 98104-7075
    Attorneys for defendant

AIKEN, Judge:

        Claimant, Della F. Salmon, brings this action pursuant to

1   - OPINION AND ORDER

the Social Security Act (the Act), 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner denying her application for disability insurance benefits under Title II of the Act. For the reasons set forth below, the Commissioner's decision is reversed and remanded for payment of benefits.

**PROCEDURAL BACKGROUND**

On May 7, 2003, plaintiff applied for disability benefits, reporting that she had been disabled since March 8, 2002. Tr. 48-50. Plaintiff's application was denied initially, although she was awarded benefits with a later onset date of April 1, 2003. Tr. 34. Plaintiff requested a hearing before an Administrative Law Judge (ALJ) asserting she had been disabled since March 8, 2002. Tr. 36. On January 5, 2006, plaintiff appeared with counsel for a hearing before an ALJ. Tr. 317-50. On May 11, 2006, the ALJ issued an unfavorable decision. Tr. 10-21. On November 12, 2006, the Appeals Council denied plaintiff's request for review, tr. 7-9, making the ALJ's decision the final agency decision. See 20 C.F.R. §§ 416.1481, 422.210.

**STATEMENT OF THE FACTS**

At the time of the hearing, plaintiff was 55 years old. Tr. 324. Plaintiff attended school through Ninth grade. Id. Plaintiff worked in the past as a Certified Nursing Assistant (CNA), salesperson, care giver, and sweeper/cleaner. Tr. 340-41. Plaintiff last worked in 2003. Tr. 324.

**STANDARD OF REVIEW**

This court must affirm the Secretary's decision if it is based on proper legal standards and the findings are supported by

2 - OPINION AND ORDER

substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the Secretary's conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A).

The Secretary has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1502, 416.920. First the Secretary determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

In step two the Secretary determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not

3   - OPINION AND ORDER

disabled.

In step three the Secretary determines whether the impairment meets or equals "one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." Id.; see 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Secretary proceeds to step four. Yuckert, 482 U.S. at 141.

In step four the Secretary determines whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, she is not disabled. If she cannot perform past relevant work, the burden shifts to the Secretary. In step five, the Secretary must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; see 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Secretary meets this burden and proves that the claimant is able to perform other work which exists in the national economy, she is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

**DISCUSSION**

At step one of the five step sequential evaluation process outlined above, the ALJ found that plaintiff had engaged in substantial gainful activity since April 1, 2003. Tr. 15, Finding 1. This finding is not in dispute. At step two, the ALJ found that plaintiff had the severe impairment of chronic obstructive pulmonary disease/asthma. Tr. 17, Finding 2. This finding is not in dispute. At step three, the ALJ found that plaintiff's impairments did not meet or equal the requirements of

4 - OPINION AND ORDER

a listed impairment at any time prior to April 1, 2003. Tr. 17, Finding 4. This finding is in dispute.

The ALJ determined that prior to April 1, 2003, plaintiff had the residual functional capacity (RFC) to perform light work, with the ability to lift 20 pounds occasionally and 10 pounds frequently and with the need to avoid concentrated exposure to fumes, odors, gasses and poor ventilation. Tr. 18.

At step four, the ALJ found that plaintiff was not able to perform her past relevant work. Tr. 17. Finally, at step five, the ALJ found that, based on plaintiff's RFC, she could perform work existing in significant numbers in the national economy; specifically as a ticket seller, electronics worker, or bench assembler. Tr. 19-20. The ALJ found, therefore, that plaintiff was not disabled from March 8, 2002, through March 31, 2003. Tr. 21.

Because there has been a determination that plaintiff became disabled at some point, "SSR 83-20 requires that the ALJ create a record which forms a basis for that onset date." Armstrong v. Commissioner, 160 F.3d 587, 590 (9th Cir. 1998). The inference of a onset date "must have a legitimate medical basis." Id. To accomplish this, "[a]t the hearing, the [ALJ] should call on the services of a medical advisor when onset must be inferred." Id. Further, "the date alleged by the individual should be used if it is consistent with all the evidence available." Id.

Defendant asserts that plaintiff's alleged onset date of March 8, 2002, is inconsistent with the medical evidence; specifically the pulmonary function testing, chest x-rays, and

5   - OPINION AND ORDER

evidence showing that plaintiff's medical condition had generally improved. Defendant, however, requests this court reverse the ALJ's finding and remand this action for additional proceedings to properly address the opinion of Dr. Nyquist, plaintiff's treating physician, and to properly address the ALJ's credibility finding regarding plaintiff. Conversely, plaintiff moves to reverse and remand for payment of benefits asserting that the ALJ erred in failing to properly credit plaintiff's treating physician's opinion and erred in finding her not credible.

<u>Plaintiff's Treating Physician</u>

On March 7, 2002, Dr. Nyquist, plaintiff's treating physician, examined plaintiff for severe shortness of breath that had been increasing over the past three days. Tr. 228. Dr. Nyquist found slight retractions around her ribs, moderately to severely diminished breath sounds and moderate to severe wheezing bilaterally. <u>Id.</u> Her extremities had trace edema. <u>Id.</u> Dr. Nyquist diagnosed plaintiff with bronchitis and moderate to severe asthma. <u>Id.</u> On March 9, 2002, plaintiff sought emergency treatment for an asthma flare-up. Tr. 137. The attending physician described plaintiff as somewhat ill-appearing in moderate respiratory distress. <u>Id.</u> Her oxygen saturation rate was 78 percent on room air, and her skin appeared dusky and cyanotic. <u>Id.</u> She was mildly tachycardic and her capillary filling was diminished. Tr. 138. Plaintiff was diagnosed with acute dyspnea secondary to reactive airway disease/chronic obstructive pulmonary disease (COPD) with acute flare with secondary chest pressure. <u>Id.</u> Dr. Nyquist noted that, "patient presents with shortness of breath now of one week's duration with

6   - OPINION AND ORDER

progression despite outpatient management. She has been treated with aggressive bronchodilator therapy. She is improving but still quite symptomatic." Tr. 139. Dr. Nyquist ultimately admitted plaintiff to the hospital. Id. Plaintiff was discharged from the hospital March 14, 2002, with a diagnosis, in part, of "severe exacerbation of reactive airway disease." Tr. 132, 139. On March 18, 2002, plaintiff was again seen by Dr. Nyquist. Tr. 226. She remained on her discharge medications, her extremities had trace edema bilaterally and his impression was COPD exacerbation and pneumonia, improving. Id.

In April 2002, Dr. Nyquist saw plaintiff who asked if she may return to work. Dr. Nyquist stated that plaintiff could return to light duty work for up to four to six hours a day, although she "must be" sitting for at least half of that time. Tr. 226. Plaintiff then sought emergency treatment in August 2002, for increased wheezing and shortness of breath. Tr. 203. Her peak flow was measured at 150, which was consistent with moderate chronic obstructive airway disease. Id. Plaintiff was administered two nebulizer treatments, and was discharged home on prednisone and a Ventolin inhaler. Tr. 204.

Later that month in August 2002, plaintiff's employment was terminated due to excessive absences. Tr. 61. Plaintiff was hired on July 5, 2002, and called in ill nine times in seven weeks. Id.

On January 8, 2003, plaintiff was hospitalized for shortness of breath. Tr. 199. Plaintiff reported that she became acutely short of breath with any physical movement. Id. The attending physician found plaintiff to have obvious increased

7   - OPINION AND ORDER

work of breathing, poor airflow throughout her chest, diffuse soft expiratory wheezes and a prolonged expiratory phase. Tr. 200. The doctor diagnosed plaintiff with emphysema, advanced with exacerbation, chronic active tobacco use and an abnormal electrocardiogram. Id.

On January 30, 2003, plaintiff saw Dr. Paula Nelson, a family practitioner. Tr. 217. Plaintiff's shortness of breath and cough had improved with medication. Id. Dr. Nelson reviewed plaintiff's EKG which showed moderately severe pulmonary hypertension. Id.

On March 9, 2003, plaintiff again sought emergency treatment for shortness of breath. Tr. 168. She was working part-time as a housekeeper and smoking a half a pack of cigarettes per day. Id. The attending physician found that plaintiff was breathing with some difficulty. Id. The physician treated her with respiratory therapy and prescribed prednisone. Tr. 169. Plaintiff's condition worsened, and on March 10, 2003, plaintiff saw Dr. Mary Morehouse, D.O. for shortness of breath. Tr. 149. Her oxygen saturation rate was 82 percent on room air, and only increased to 87 percent after Solu-Medrol and breathing treatments with Xopenex and Pulmicort were administered. Id. Plaintiff experienced difficulty breathing and shortness of breath brought on by physical exertion. Id. Dr. Morehouse admitted plaintiff to the hospital with COPD exacerbation with probable bronchitis/pneumonia. Tr. 150. Plaintiff's diagnoses upon discharge were COPD exacerbation and possible congestive heart failure. Tr. 148. Her discharge medications included: Advair, aspirin, Cardizem, Lexapro, Combivent, Zithromax, and

8 - OPINION AND ORDER

prednisone. Id.

On August 9, 2003, plaintiff saw Dr. Rick Salisbury, an internist. Tr. 265. Dr. Salisbury concluded that plaintiff had "severe COPD." Id. On August 25, 2003, Dr. Salisbury noted that plaintiff was limited in her walking and other activities. Tr. 264. Dr. Salisbury also noted that he had received plaintiff's medical records which showed that in August 2002, plaintiff's FVC was 83 percent of predicted, her FEVI was "only" 52 percent of predicted, and her FEF was "only" 14 percent of predicted. Tr. 263.

It is notable that although plaintiff had periods of improvement with treatment, she was never able to return to work on a sustained basis. The issue is whether plaintiff has the RFC for "work activity on a regular and continuing basis." 20 C.F.R. §§ 404.1545, 416.945. "Occasional symptom-free periods - and even the sporadic ability to work - are not inconsistent with disability." Lester v. Chater, 81 F.3d 821, 833 (9th Cir. 1995). The Ninth Circuit holds that an RFC involves the ability to tolerate a "sustained daily work routine" at the level of exertion being considered. Cox v. Califano, 587 F.2d 988, 990 (9th Cir. 1978). The evidence in the record, including the doctor's and hospital's records during the time period at issue, support the conclusion that plaintiff was unable to "sustain a daily work routine" at the light exertional level.

The court should reverse and remand an ALJ's decision for an award of benefits if: (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination

9    - OPINION AND ORDER

of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004). Based on the evidence in the record, I find it appropriate to reverse and remand this decision for payment of benefits. During the year at issue, plaintiff sought emergency treatment three times and was hospitalized twice. Tr. 148-50, 99-200, 203. Then, in August 2002, plaintiff's employment was terminated due to excessive absences. Finally, there is no evidence of malingering. Plaintiff has satisfactorily established an onset date of March 8, 2002.

## CONCLUSION

The Commissioner's decision is not supported by substantial evidence and is therefore reversed and remanded for payment of benefits. Further, the Commissioner's motion to remand (doc. 19) is denied.

IT IS SO ORDERED.

Dated this  5  day of November 2007.


/s/ Ann Aiken
Ann Aiken
United States District Judge

10   - OPINION AND ORDER